OPINION
{¶ 1} Appellant, Nancy M. DeLarosa, appeals from judgment entries of the Portage County Municipal Court, Ravenna Division, denying her motion to dismiss, motion to suppress, and motion in limine. For the reasons that follow, we affirm.
 {¶ 2} The record discloses the following facts. On January 12, 2003, appellant was issued a traffic citation by Trooper John Altman ("Trooper Altman"), of the Ohio State Highway Patrol. The citation originated from Trooper Altman's stop of appellant's vehicle on State Route 43, in Portage County, Ohio. Ultimately, appellant was cited for speeding, in violation of R.C. 4511.21(C), and driving under the influence ("DUI"), in violation of R.C. 4511.19(A)(1).
 {¶ 3} On January 15, 2003, appellant entered a plea of not guilty to the aforementioned traffic citations. Accordingly, the court issued a February 13, 2003 notice, setting the trial date for April 30, 2003, at 11:00 a.m.
 {¶ 4} On February 19, 2003, appellant filed a motion to suppress. In addition, on that same day, appellant filed a motion for jury demand, motion for discovery, and a motion for a bill of particulars. Her motion to suppress requested the suppression of field sobriety test results, Trooper Altman's observations during the traffic stop, and any statements made by appellant during the traffic stop. A portion of her motion to suppress maintained that Trooper Altman did not have probable cause to detain and arrest her for DUI. The court issued a notice to the parties, scheduling a hearing on appellant's motion to suppress for April 30, 2003, at 11:00 a.m.
 {¶ 5} On April 23, 2003, appellant filed a motion to dismiss predicated upon the alleged failure of the court to bring this matter to trial within ninety days of her arrest. Appellant maintained that the court had violated her constitutional right to a speedy trial, as the April 30, 2003 trial date was beyond the statutory time limitation for a misdemeanor. Specifically, appellant noted that the calculation of the ninety-day time limit commenced on January 13, 2003, and ended on April 12, 2003. Because the court set the trial date for April 30, 2003, eighteen days beyond the statutory time limitation, appellant requested a dismissal.
 {¶ 6} As scheduled, the trial court held a hearing on appellant's motion to suppress on April 30, 2003, at 11:00 a.m. A visiting judge presided at the suppression hearing. At the suppression hearing, appellant's counsel stated that prior to the hearing the court informed him that the trial scheduled for April 30, 2003, would be held at a later date.
 {¶ 7} The sole witness to testify during the suppression hearing was Trooper Altman. Trooper Altman testified that he clocked appellant's vehicle traveling eleven miles over the posted speed limit. Due to her speed, Trooper Altman signaled appellant to pull over. Once appellant's vehicle had stopped, Trooper Altman stated that he approached appellant's passenger-side window. Trooper Altman testified that, upon speaking to appellant, he detected a strong scent of alcohol. When he inquired as to whether appellant had been drinking, appellant admitted that she had consumed two beers.
 {¶ 8} Based upon the strong scent of alcohol and appellant's admission, Trooper Altman testified that he accompanied appellant to his patrol car. While appellant was sitting in the patrol car's passenger seat, Trooper Altman performed a horizontal gaze nystagmus.[1] During the horizontal gaze nystagmus, Trooper Altman noticed that appellant's eyes were bloodshot and glossy. He further testified that appellant failed the horizontal gaze nystagmus, indicating that appellant was under the influence of alcohol.
 {¶ 9} Trooper Altman stated that he used a portable breathalyzer to evaluate appellant's blood alcohol level. After appellant blew into the breathalyzer, Trooper Altman informed her that the results of the test could not be used against her.
 {¶ 10} Trooper Altman testified that, following the portable breath test, he conducted additional field sobriety tests. First, Trooper Altman asked appellant, while standing in an upright position with her arms at her sides, to raise one leg about six inches off the ground and count to thirty. Thereafter, he asked appellant to walk nine heel to toe steps in a straight line, pivot, and return in the same manner. Trooper Altman testified that appellant failed both field sobriety tests.
 {¶ 11} Despite Trooper Altman's findings, he conceded that the field sobriety tests were conducted outside the view of a video camera located on the dashboard of his patrol car, which was taping the stop. Nevertheless, the recorded audio portion of the stop assisted in depicting the events of the stop. Based upon appellant's failure of the field sobriety tests, Trooper Altman arrested appellant for DUI.[2]
 {¶ 12} Following the suppression hearing, the court denied appellant's motion to suppress. The court found that Trooper Altman had "reasonable cause to stop [appellant], having observed a violation of the traffic laws. Upon further investigation [Trooper Altman] observed [appellant] had a strong odor of an alcoholic beverage on or about her breath and after the physical coordination tests he was convinced that she was under the influence of alcohol and was impaired." Although the court suppressed the results of the portable breath test, the court found that the field sobriety tests performed by Trooper Altman were in accord with Ohio law and the requirements of the National Highway Traffic Safety Administration ("NHTSA"). Thus, the court determined that Trooper Altman "had probable cause to effect the arrest of [appellant]."
 {¶ 13} On May 28, 2003, the court held a hearing on appellant's motion to dismiss. There was no testimony or witnesses produced during this hearing. Appellant's counsel argued that the court's previously scheduled hearing date of April 30, 2003, was beyond the statutory ninety-day time limitation and, therefore, violated appellant's right to a speedy trial. In rebuttal, the prosecution argued that appellant's various motion filings tolled the statutory time limitations for a speedy trial. Appellant countered by arguing that because the motions were filed after the court had set the inappropriate trial date, the motions did not act to toll the statutory time limitations.
 {¶ 14} The court held a motion hearing on August 29, 2003, to supplement the evidence in relation to appellant's motion to dismiss. The court's assignment commissioner was the sole witness to testify at the motion hearing. The assignment commissioner testified that she initially set the trial date for April 30, 2003. However, the assignment commissioner stated that after appellant filed her motion to suppress, the suppression hearing replaced the scheduled trial on April 30, 2003. The assignment commissioner testified that her normal procedure was to reschedule a trial date following the disposition of a suppression hearing.
 {¶ 15} On September 5, 2003, the court issued a judgment entry denying appellant's motion to dismiss. The court determined that appellant's filing of a jury demand removed any violation of the statutory time limits, as the jury demand caused the April 30, 2003 trial date to be extended. Also, the court concluded that the motion to suppress tolled the statutory time limit.
 {¶ 16} Shortly thereafter, the court scheduled this matter for an October 8, 2003 trial date. Before the October 8, 2003 trial date, appellant filed a motion to continue for a later trial date. Accordingly, the court rescheduled the trial date for November 4, 2003.
 {¶ 17} On November 4, 2003, appellant filed a motion in limine requesting the exclusion of any testimony and evidence originating from Trooper Altman's field sobriety tests. The motion in limine was predicated upon Trooper Altman's alleged destruction of his handwritten notes, which were taken during the field sobriety tests. At a hearing on the motion in limine, appellant maintained that Trooper Altman's suppression hearing testimony established his destruction of the handwritten notes following the field sobriety tests. Appellant concluded that Trooper Altman's destruction of the handwritten notes deprived her of potentially exculpatory evidence and prejudiced her ability to defend against the DUI charge.
 {¶ 18} To assist in resolving the motion in limine, Trooper Altman provided further testimony. He stated that his prior testimony only established that he generally took handwritten notes during a field sobriety test. Trooper Altman testified that he could not remember taking handwritten notes during appellant's field sobriety tests.
 {¶ 19} Following Trooper Altman's testimony, the trial court orally denied appellant's motion in limine. The court found that there was no evidence showing Trooper Altman's creation or destruction of handwritten notes.
 {¶ 20} On November 5, 2003, appellant entered a plea of no contest to the DUI charge, and the prosecution moved to dismiss the speeding charge. The trial court accepted the no contest plea and found appellant guilty of DUI. The court then sentenced appellant to sixty days in jail and a $500 fine. However, the jail term was to be suspended and the fine reduce to $300 if appellant completed a seventy-two hour DUI class or if appellant had no alcohol related offenses for two years. In addition, appellant's license was suspended for 180 days, but appellant was permitted to drive for occupational purposes.
 {¶ 21} From this judgment, appellant filed a timely appeal and now sets forth the following three assignments of error.
 {¶ 22} "[1.] The trial court erred in overruling Appellant's Motion to Dismiss for the State's failure to bring her to a speedy trial with the constitutional and statutory time period.
 {¶ 23} "[2.] The trial court erred in overruling Appellant's Motion to Suppress certain evidence, including the results of the field sobriety tests, the Trooper's opinions, the statements taken from Appellant, and Appellant's refusal to submit to alcohol testing, resulting from the traffic stop of January 12, 2003.
 {¶ 24} "[3.] The trial court erred in overruling Appellant's Motion in Limine regarding the admissibility of the field sobriety tests in holding that there was no showing that there were handwritten notes of the Trooper's field tests."
 {¶ 25} We first note that appellant's plea of no contest does not act to waive her assigned errors with respect to her motion to dismiss and her motion to suppress. Unlike a plea of guilty, a plea of no contest does not preclude a defendant from asserting on appeal that the trial court erred in ruling on these pre-trial motions. Crim.R. 12(I).
 {¶ 26} Under her first assignment of error, appellant argues that the state failed to bring this matter to trial within ninety days, as required by R.C. 2945.71(B), thereby violating her constitutional and statutory right to a speedy trial. In doing so, appellant maintains that because the court initially set this matter beyond the ninety-day time limit, any subsequent action taken by her could not toll the time limitation. Appellant further notes that she never waived her speedy-trial rights or requested a continuance of this matter. Thus, appellant concludes that her right to a speedy trial has been violated.
 {¶ 27} "The standard of review of a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set by R.C. 2945.71." State v.Blumensaadt, 11th Dist. No. 2000-L-107, 2001-Ohio-4317, at ¶ 16. When determining whether the state has violated a defendant's constitutional and statutory right to a speedy trial, the court weighs the length of the delay, the reasons for the delay, the defendant's timeliness and manner of asserting this right, and whether the defendant has suffered identifiable prejudice. State v. Burgess, 11th Dist. No. 2003-L-069, 2004-Ohio-4395, at ¶ 31, citing State v. Broughton (1991),62 Ohio St.3d 253, 256.
 {¶ 28} Once a defendant establishes that he or she was not brought to trial within the applicable speedy trial limits, they have set forth a prima facie case for dismissal. State v. Baker (1993), 92 Ohio App.3d 516,525. The burden then shifts to the state to provide evidence indicating that the defendant's constitutional and statutory right to a speedy trial was not violated. Id. at 525-526.
 {¶ 29} Appellant was charged with DUI, in violation of R.C.4511.19(A)(1), a first degree misdemeanor, and speeding, in violation of R.C. 4511.21(C), a minor misdemeanor. Under R.C. 2945.71(D), misdemeanor offenses of varying degrees, which arise out of the same act or transaction, "shall be brought to trial * * * within the time period required for the highest degree of offense charged[.]" Accordingly, the statutory time limitation will be predicated upon appellant's first degree misdemeanor.
 {¶ 30} That being said, R.C. 2945.71(D) required appellant to be brought to trial within ninety days of her arrest. The record confirms that appellant was placed under arrest on January 12, 2003. The ninety-day time limit commenced the following day, January 13, 2003. See, e.g., Crim.R. 45(A). Nevertheless, following a pretrial hearing, the court scheduled trial for April 30, 2003. Clearly, the scheduled trial date was eighteen days beyond the ninety-day time limitation, as the matter should have been scheduled for April 12, 2003.
 {¶ 31} Because the initially scheduled trial date was beyond the ninety-day time limitation, the central issue becomes whether appellant's various filings, following the court's scheduling of the trial date, caused a tolling of the time limit. An extension of the ninety-day time limit is permissible under R.C. 2945.72, to wit:
 {¶ 32} "The time within which an accused must be brought to trial * * * may be extended only by the following:
 {¶ 33} "* * *
 {¶ 34} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]"
 {¶ 35} At the outset, we note that the trial court erred in determining that appellant's jury demand acted to toll the statutory time limit. Under R.C. 2945.17(A), appellant had a right to a jury trial pursuant to a timely request. We have previously determined that a defendant's request for a jury trial of right does not toll the time calculation of a speedy trial because the trial court is not required to make a ruling. See, e.g., State v. Walker (Aug. 25, 2000), 11th Dist. No. 99-A-0048, 2000 Ohio App. LEXIS 3858, at 5-6; State v. Knittel (Feb. 21, 1992), 11th Dist. No. 91-A-1599, 1992 Ohio App. LEXIS 747, at 6.
 {¶ 36} Despite the trial court's misplaced reliance upon the jury demand, appellant's motion to suppress, standing alone, acted to toll the ninety-day time limit of R.C. 2945.71(D). It is well-established that a defendant's pre-trial motion to suppress will toll the statutory time limitations for a speedy trial. See, e.g., State v. Jackson, 11th Dist. No. 2003-A-0005, 2004-Ohio-2920; Burgess. However, the instant case presents us with the novel question of whether the filing of a motion to suppress, after the court has scheduled a trial date beyond the statutory time limitation, tolls the time calculation of a speedy trial. We conclude that it does.
 {¶ 37} In State v. Pierson, 149 Ohio App.3d 318, 2002-Ohio-4515, at ¶ 45, this court determined that, "[a] plain reading of R.C. 2945.71
demonstrates that the mere setting of a trial date is irrelevant. Rather, it is the date that the defendant is actually `brought to trial' that is relevant to calculating the speedy trial time." The language of R.C. 2945.71(D) unambiguously bases its speedy trial calculation on when the defendant is "brought to trial." Based upon this legal foundation, we conclude that the court's initial scheduling error in this case is irrelevant to the calculation of a speedy trial.
 {¶ 38} Because the trial court's scheduling of the trial date outside of the ninety-day time limit was irrelevant, appellant's filing of a motion to suppress, prior to the expiration of ninety days, was an intervening act which tolled the time limit pursuant to R.C. 2945.72. In short, appellant's filing of the motion to suppress tolled the statutory time limitation, despite the trial court's initial scheduling error, and allowed the court to extend the actual date appellant was brought to trial beyond ninety days.[3] We also note that appellant's motions for discovery and bill of particulars tolled the speedy trial time limitations. Thus, appellant's first assignment of error is without merit.
 {¶ 39} Moreover, appellant has failed to establish any identifiable prejudice that resulted from the initial scheduling error. See, e.g.,Burgess; Broughton. The motion to suppress in effect absolved the court's mistake of setting this matter for trial beyond the ninety-day time limit. Appellant argues that the court's notice of a suppression hearing failed to adequately inform her of the court's rescheduling of the trial date. However, during the suppression hearing, her counsel stated that the court, prior to the hearing, informed him that the trial would not be held on April 30, 2003. Again, appellant has failed to establish any prejudice which resulted from the court's initial scheduling error. For this additional reason, appellant's first assignment of error is without merit.
 {¶ 40} Under her second assignment of error, appellant argues that the trial court erred in denying her motion to suppress. Appellant presents three separate issues for our review.
 {¶ 41} We will first set forth the appropriate standard of review. At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366;State v. Smith (1991), 61 Ohio St.3d 284, 288.
 {¶ 42} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank (Mar. 22, 2002), 11th Dist. No. 2001-L-054, 2002-Ohio-1337.
 {¶ 43} First, appellant contends that Trooper Altman failed to administer the field sobriety tests in accordance with the NHTSA standards. Specifically, appellant challenges the field sobriety tests based upon the following: (1) Trooper Altman's failure to perform a vertical gaze nystagmus; (2) Trooper Altman's failure to ask appellant if she was wearing contacts; and (3) Trooper Altman's failure to videotape the horizontal gaze nystagmus, the one-legged stand test, and the walk-and-turn test. Appellant concludes that due to Trooper Altman's non-compliance with NHTSA standards, any evidence regarding the test results and Trooper Altman's observations should have been suppressed.
 {¶ 44} In State v. Homan (2000), 89 Ohio St.3d 421, paragraph one of the syllabus, 2000-Ohio-212, the Ohio Supreme Court held, "in order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." The Court reasoned that even minor deviations from standardized procedures can severely bias the results. Id. at 426.
 {¶ 45} In State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, at ¶ 8, the Court extended the Homan holding to apply to the admissibility of field sobriety test results at trial. Consequently, field sobriety tests must be conducted in strict compliance with standardized procedures for the test results to be admissible at trial.[4] Id. However, the Court further concluded that, even if the test results were inadmissible, an officer may testify as to any observations made during a defendant's performance of nonscientific standardized field sobriety tests. Id. at syllabus.
 {¶ 46} Trooper Altman testified that he did not perform a vertical gaze nystagmus. The standards, however, demonstrate that Trooper Altman was not required to perform the vertical gaze nystagmus. Although the standards describe the proper procedures to perform a vertical gaze nystagmus, such standards also confirm that only the horizontal gaze nystagmus is used to assess whether an individual is intoxicated. Moreover, trial courts have excluded the results of the vertical gaze nystagmus test because the Ohio Supreme Court has not approved this test as a method to gauge alcohol consumption. See e.g., State v. Anez
(2000), 108 Misc.2d 18, 28, citing State v. Bresson (1990),51 Ohio St.3d 123. See, also, State v. Holt (2002), 119 Misc.2d 1, 17.
 {¶ 47} Trooper Altman also testified that he could not recall asking appellant if she was wearing contact lenses prior to performing the horizontal gaze nystagmus. A review of NHTSA standards establish that an officer is not required to inquire as to whether an individual is wearing contacts. As Trooper Altman testified, contacts would not affect the reliability of the horizontal gaze nystagmus.
 {¶ 48} The videotape exhibit and Trooper Altman's testimony confirm that the field sobriety tests were not conducted within the view of the patrol car's dashboard video camera. Trooper Altman conducted the field sobriety tests within, and to the rear, of the patrol car. Again, a review of NHTSA standards shows no requirement to videotape the field sobriety tests.
 {¶ 49} Furthermore, a police officer's failure to videotape field sobriety tests is more akin to failing to create evidence rather than destroying evidence. See, e.g., State v. McDade, 12th Dist. Nos. CA2003-09-096 and CA2003-09-097, 2004-Ohio-3627, at ¶ 17. However, "there is no constitutional, statutory or common law duty to use a specific investigative tool in satisfying Homan's strict compliance mandate." Athens v. Gilliand, 4th Dist. No. 02CA4, 2002-Ohio-4347, at ¶ 5. As a result, it is well established that "a police officer's failure to make a video and audio tape of a defendant's DUI traffic stop and field sobriety tests did not violate the defendant's due process rights warranting suppression of the evidence or dismissal of the charge."McDade at ¶ 17. See, also, Gilliand at ¶ 5; State v. Shepherd, 2nd Dist. No. 2002-CA-55, 2002-Ohio-6383, at ¶ 26; State v. Wooten, 4th Dist. No. 01 CA31, 2002-Ohio-1466.
 {¶ 50} This court has previously determined that when an alleged procedural requirement is absent from the NHTSA standards, the admissibility of the test results is dependent upon the officer's training and the officer's compliance with such training. State v.Dohner, 11th Dist. No. 2003-P-0059, 2004-Ohio-7242, at ¶ 13. Here, Trooper Altman testified that he had been employed by the Ohio State Highway Patrol, as a trooper, for five years. He provided additional testimony establishing his qualifications and specialized training with respect to DUI interrogation and field sobriety testing. Trooper Altman's testimony, in conjunction with the recorded audio of appellant's arrest, establish that Trooper Altman strictly complied with his training and the NHTSA standards when conducting the nonscientific field sobriety tests. Thus, the Homan and Schmitt strict compliance standard has been met.
 {¶ 51} Moreover, per Schmitt, an officer may testify at trial regarding observations of nonscientific field sobriety tests regardless of the officer's compliance or noncompliance with standardized procedures. Thus, the court properly denied appellant's request to suppress Trooper Altman's observations.
 {¶ 52} In conclusion, Trooper Altman's failure to perform a vertical gaze nystagmus, failure to ask appellant if she was wearing contacts, and failure to videotape the field sobriety tests did not result in a lack of strict compliance with NHTSA standards. This portion of appellant's second assignment of error is without merit.
 {¶ 53} Appellant's second issue for review contends that any tests conducted during Trooper Altman's stop were in violation of her constitutional rights, as well as the procedural safeguards established by Miranda v. Arizona (1996), 384 U.S. 4365. In support of this contention, appellant maintains that Trooper Altman expressly advised her that the results of the field sobriety tests would not be used against her, thereby improperly inducing her compliance with testing procedures.
 {¶ 54} A review of the record before us fails to establish that Trooper Altman informed appellant that the field sobriety tests would not be used against her. To the contrary, the recorded audio portion of appellant's stop clearly demonstrates that Trooper Altman merely informed appellant that the results of her portable breath test were not admissible evidence. This statement was in response to appellant's inquiry as to whether she had failed the portable breath test. Trooper Altman's testimony at the suppression hearing corroborates this evidence.
 {¶ 55} At no time did Trooper Altman inform appellant that the results of the field sobriety tests would not be used against her. His statement that the results of the portable breath test were not admissible as evidence was proper. See, e.g., State v. Ferguson, 3rd Dist. No. 4-01-34, 2002-Ohio-1763, 2002 Ohio App. LEXIS 1697, at 8, ("[T]he results of the [portable breath test] are inadmissible because the Ohio Department of Health no longer recognizes the test."). Thus, appellant has failed to prove that Trooper Altman improperly coerced her to participate in the field sobriety tests. This portion of appellant's second assignment of error is without merit.
 {¶ 56} Finally, appellant argues that Trooper Altman improperly relied upon the inadmissible portable breath test to acquire the requisite reasonable suspicion that appellant was under the influence of alcohol. Thus, appellant asserts that Trooper Altman's statements and observations should have been suppressed.
 {¶ 57} We first note that the trial court properly suppressed the results of the portable breath test. Nevertheless, to conduct an investigative stop of appellant's vehicle, Trooper Altman needed a reasonable suspicion that appellant was engaged in criminal activity, or that appellant was operating her vehicle in violation of the law.Eastlake v. Reithmann, 11th Dist. Nos. 2003-L-076 and 2003-L-079,2005-Ohio-137, at ¶ 14. In evaluating the propriety of the stop, a reviewing court must consider the totality of the surrounding circumstances. Id.
 {¶ 58} Trooper Altman testified that the speed of appellant's vehicle registered at eleven miles per hour over the posted speed limit. Appellant's traffic offense provided Trooper Altman with probable cause to subject her to the initial roadside stop. State v. Teter (Oct. 6, 2000), 11th Dist. No. 99-A-0073, 2000 Ohio App. LEXIS 4656, at 11. As a result, Trooper Altman stopped appellant to issue a traffic citation. He further testified that, upon speaking to appellant, he immediately detected a strong scent of alcohol. Trooper Altman asked appellant if she had been drinking, and appellant admitted that she had consumed two beers. Moreover, Trooper Altman stated that, while performing the horizontal gaze nystagmus, he noticed appellant's eyes were bloodshot and glassy. He then proceeded to conduct the field sobriety tests and portable breath test.
 {¶ 59} Trooper Altman's observations and testimony demonstrate that the totality of the circumstances establish the requisite reasonable suspicion. See, e.g., Dohner at ¶ 18. This reasonable suspicion was not formed solely upon appellant's portable breath test results. Rather, Trooper Altman acquired reasonable suspicion via his various observations of appellant's physical condition, appellant's admission that she had been drinking, and the results of the field sobriety tests. Accordingly, the totality of the circumstances established the requisite reasonable suspicion of appellant's DUI, and this portion of appellant's second assignment of error is not well-taken.
 {¶ 60} Based upon the foregoing analysis, the trial court did not err by overruling appellant's motion to suppress with respect to Trooper Altman's observations and field sobriety test results. Appellant's second assignment of error is without merit.
 {¶ 61} Under her third assignment of error, appellant argues that the trial court erred in denying her pre-trial motion in limine. Specifically, appellant contends that Trooper Altman's observations of the field sobriety tests should have been excluded due to Trooper Altman's destruction of his handwritten notes which described her performance.
 {¶ 62} A ruling on a motion in limine is a tentative, preliminary, or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context. State v. Grubb (1986),28 Ohio St.3d 199, 203. "In general, the ruling on a motion in limine does not preserve the record on appeal and an appellate court need not review the ruling unless the claimed error is preserved by an objection at trial." Id. at paragraph two of syllabus. "An in limine order is generally not a pretrial motion preserved under Crim.R. 12(H) because it is not `[a] defense, objection, or request which is capable of determination without the trial of the general issue.' * * * Accordingly, a no contest plea waives asserted error to a ruling inlimine." (Emphasis sic. and citations omitted.) State v. Ruegsegger
(1989), 64 Ohio App.3d 626, 629. See, also, State v. Pyo, 5th Dist. No. 04CA01009, 2004-Ohio-4768, at ¶ 19; Columbus v. Sullivan (1982),4 Ohio App.3d 7, 9.
 {¶ 63} Because appellant's no contest plea precluded her from objecting to the claimed error of the motion in limine, appellant has waived any error regarding the court's denial of this motion. Thus, appellant's third assignment of error is without merit.
 {¶ 64} Appellant's first, second, and third assignments of error are without merit.
We hereby affirm the judgments of the trial court.
Ford, P.J., Grendell, J., concur.
[1] As described by Trooper Altman, the horizontal gaze nystagmus requires a subject to focus on and visually follow a pen which is being held approximately twelve to fifteen inches from the subject's eyes and is moved in a lateral motion.
[2] Subsequent to her arrest, appellant refused to take a breathalyzer test at the police station.
[3] Thirty-eight days accrued from January 13, 2003, until appellant filed her motion to suppress. Appellant's motion to dismiss based upon the alleged speedy trial violations further tolled the ninety-day time limitation. See, e.g., State v. Turner, 7th Dist. No. 93 CA 91, 2004-Ohio-1545, 2004 Ohio App. LEXIS 1379, at 12, citing State v.Bickerstaff (1984), 10 Ohio St.3d 62, 67. An additional twelve days accrued from the denial of the motion to suppress and appellant's motion to continue. Appellant's continuance, however, further tolled the ninety days until the November 4, 2003 trial date, well within the speedy trial time limitations.
[4] The Homan and Schmitt decisions have been superseded by the amendment of R.C. 4511.19. The amended statute provides that field sobriety tests are admissible if the officer substantially complied with the testing standards. This amendment, however, became effective subsequent to appellant's arrest. Thus, we will apply the Homan andSchmitt strict compliance standard.